JOSHUA P. THOMPSON, No. 250955
E-Mail: jthompson@pacificlegal.org
ANASTASIA P. BODEN, No. 281911
E-Mail: apb@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOOK PASSAGE and BILL PETROCELLI,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California,<br><br>Defendant. | Case No. ____________________<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br>**Civil Rights - 42 U.S.C. § 1983** |

## INTRODUCTION

1. Book Passage is a small, family-owned business that operates three book stores in Northern California. The bookstores are a hub for literary activity in the area, and serve the community as a place where readers and authors can meet, discuss ideas, debate, and spread information. Book Passage accomplishes this through "author events" (*see* http://www.bookpassage.com/events), where up-and-coming and established authors promote their works, give talks, interact with readers, and sign copies of their books. Book Passage's continued ability to host author events is significantly burdened and seriously threatened by the recently amended California Civil Code § 1739.7 (Section 1739.7 or "autograph law"), which makes it illegal for Book Passage to sell autographed books as it has for the past four decades. As a result of

///

this newly amended law, Book Passage, and its owner, Bill Petrocelli, are threatened with onerous compliance obligations and potentially ruinous fines if they continue to sell autographed books.

2. Section 1739.7 requires that for each autographed book that Plaintiffs offer or sell (for at least $5.00), Plaintiffs must provide a "certificate of authenticity," which must include, among other things, a description of the book, the identity of the person who signed it, as well as the identity of third parties (witnesses to the autograph and the identity of the person from whom Plaintiffs obtained the book), along with additional record-keeping minutiae (date of sale, whether Plaintiff witnessed the autograph, insurance information, and more). Plaintiffs must maintain copies of these certificates for at least seven years. And any violation of these requirements—even if no intentional or reckless wrongdoing exists—subjects Plaintiffs to actual damages, plus a civil penalty in an amount equal to 10 times actual damages, plus court costs, plus reasonable attorney's fees, plus interest, plus expert witness fees. The law also allows a court, in its discretion, to award additional damages based on its determination of the "egregiousness" of the conduct.

3. This law violates the First Amendment because it burdens the ability of Book Passage and Mr. Petrocelli, as well as other booksellers, to provide a forum for authors and their readers; and to disseminate books, including books that may be autographed, dedicated, or otherwise inscribed by authors. It is also unconstitutionally overbroad, because it burdens a vast amount of protected speech. The law violates the Equal Protection Clause of the Fourteenth Amendment because it imposes its onerous burdens on booksellers while irrationally and arbitrarily exempting pawn shops and certain online retailers. Plaintiffs therefore bring this lawsuit to vindicate their rights under the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

4. Plaintiffs Book Passage and William (Bill) Petrocelli bring this civil-rights lawsuit pursuant to 42 U.S.C. § 1983, for the violations of rights secured by the First and Fourteenth Amendments to the United States Constitution.

5. Jurisdiction over Plaintiffs' claims for declaratory and injunctive relief is proper under 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (civil rights jurisdiction), and 2201-2202 (the Declaratory Judgment Act).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), on the ground that all or a substantial part of the acts giving rise to Plaintiffs' claims took place in the Northern District of California.

**INTRADISTRICT ASSIGNMENT**

7. Intradistrict venue is proper in the San Francisco or Oakland divisions of this District Court under Local Court Rule 3-2(d), because all of the acts giving rise to Plaintiffs' claims occurred in San Francisco and Marin Counties.

**PARTIES**

**Plaintiffs**

8. Book Passage is an S-corporation incorporated under the laws of the State of California. It has locations in Corte Madera, San Francisco, and Sausalito, California. Book Passage hosts author book-signing events throughout the greater San Francisco Bay Area over 700 times a year, and also runs a "Signed First Editions Book Club."

9. Bill Petrocelli is a United States citizen and a resident of Mill Valley, California. Along with his wife Elaine, he is co-owner of Book Passage. Mr. Petrocelli is an author himself, and has written three books, with a fourth slated to be published next year.

**Defendant**

10. Defendant Xavier Becerra is the Attorney General of the State of California. Mr. Becerra is the chief law officer of the State and is responsible for enforcing the challenged law. Mr. Becerra has the authority to enjoin, fine, and otherwise prohibit Plaintiffs from selling their signed books in and from the State of California. In all of his actions and omissions alleged herein, Mr. Becerra is acting under the color of state law and is being sued in his official capacity, pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

///

///

///

///

///

## FACTUAL ALLEGATIONS

**Book Passage hosts book signings and author events, and sells signed books---activities that are fundamental to First Amendment freedoms**

11. In 1976, Mr. Petrocelli and his wife Elaine founded Book Passage in Larkspur, California, with the goal of creating the best possible bookstore for the people of Marin County. Since that time, Book Passage has expanded to three stores.

12. The Petrocellis are active in the bookselling community. Bill served two terms on the board of directors for the American Booksellers Association. Elaine was named "1997 Bookseller of the Year" by *Publishers Weekly* magazine.

13. The Petrocellis always dreamed of bringing "the world to Marin County," and they succeeded. Book Passage hosts more than 700 author events every year. At these events, authors give talks, engage in discussions, read passages from their books, and interact with readers.

14. Authors appearing at Book Passage's author events discuss a wide-range of topics, including art and architecture, baseball, botany, economics, environmentalism, fashion, gardening, health care, literature, music, politics, religion, space exploration, zoology, and much more.

15. Book Passage hosts established and new authors alike. High-profile authors who have spoken and signed books at Book Passage's author events include Senator Bernie Sanders; Judy Collins; Jane Goodall; Ralph Nader; Caitlyn Jenner; John Kasich; *Washington Post* columnists E.J. Dionne, Jr. and Charles Krauthammer; *New York Times* columnist Richard Brooks; *Reason* senior editor Brian Doherty; former Nixon-White House counsel John Dean; former congressman Barney Frank; and comedian Gilbert Gottfried.

16. Author events provide an important forum for local and up-and-coming authors to spread their ideas and engage with their audience. The availability of author events is vital for the sale of local books and books written by new authors.

17. Authors use these opportunities to engage with their audience. Author events often include a question and answer session where both author and community members discuss issues related to the book. These events frequently give authors new ideas for future topics, and give community members greater insight into the ideas presented in the books.

18. Book Passage's author events serve as a valuable forum for the exchange of ideas.

19. A central component of these author events is the opportunity for authors and readers to interact by having their books signed. Authors often include a short note to a new book's owner. Some patrons ask that autographs be dedicated to a friend or relative.

20. For the past 12 years, Book Passage has offered the popular "Signed First Editions Club," a monthly bookclub through which subscribers receive a first-edition book signed by an emerging author. Selections from the club have gone on to win four Pulitzer Prizes, a Booker Prize, a National Book Award, and National Book Critics Circle Awards, and many other prestigious prizes.

**Book Passage sells signed books from its stores**

21. After author events, Book Passage retains signed books to sell in its stores.

22. Each year Book Passage sells tens of thousands of signed books. The price for a signed book is the same as an unsigned book; Book Passage does not profit from the sale of the signature. Author signatures rarely add any value to the books sold.

23. Nearly all signed books sold at Book Passage are signed at author events; others are shipped directly from the author or publisher. There is little chance that any books sold at Book Passage are signed by anyone other than the author.

24. Because The Book's Passage's customers do not pay extra for the author's signature, there is no potential for financial harm to the customer from a fraudulent signature for the sale of a signed book.

**The challenged law**

25. California Civil Code § 1739.7, as amended and effective January 1, 2017, imposes conditions on "dealers" who sell or offer to sell autographed memorabilia in or from California.

26. As originally drafted, Section 1739.7 applied only to dealers of "sports" memorabilia. (*See* Cal. Civ. Code § 1739.7 (originally enacted Sept. 12, 1992)).

27. Following the enactment of Assembly Bill 1570, Section 1739.7 now applies to a "dealer" of any "collectible," which is defined as an "autographed item sold or offered for sale in

///

or from this state by a dealer to a consumer for five dollars ($5) or more." Cal. Civ. Code § 1739.7(a)(2).

28. Section 1739.7 defines "dealer" as:

> a person who is principally in the business of selling or offering for sale collectibles in or from this state, exclusively or nonexclusively, or a person who by his or her occupation holds himself or herself out as having knowledge or skill peculiar to collectibles, or to whom that knowledge or skill may be attributed by his or her employment of an agent or other intermediary that by his or her occupation holds himself or herself out as having that knowledge or skill.

Cal. Civ. Code § 1739.7(a)(4)(A).

29. Expressly excluded from the definition of a "dealer" are individuals who sign their autograph, pawnbrokers, and certain providers or operators of online marketplaces. Cal. Civ. Code § 1739.7(a)(4)(A).

30. Every time that a dealer sells or offers to sell an autographed item, she must provide a "certificate of authenticity," which must be in at least 10-point bold typeface, signed by the dealer or an authorized agent, and dated. Cal. Civ. Code § 1739.7(b).

31. Under the law, each certificate of authenticity "shall do all of the following:"

> (1) Describe the collectible and specify the name of the personality who autographed it.
>
> (2) Either specify the purchase price and date of sale or be accompanied by a separate invoice setting forth that information.
>
> (3) Contain an express warranty, which shall be conclusively presumed to be part of the bargain, of the authenticity of the collectible. This warranty shall not be negated or limited by reason of the lack of words such as "warranty" or "guarantee" or because the dealer does not have a specific intent or authorization to make the warranty or because any statement relevant to the collectible is or purports to be, or is capable of being, merely the dealer's opinion.
>
> (4) Specify whether the collectible is offered as one of a limited edition and, if so, specify (A) how the collectible and edition are numbered and (B) the size of the edition and the size of any prior or anticipated future edition, if known. If the size of the edition and the size of any prior or anticipated future edition is not known, the certificate shall contain an explicit statement to that effect.
>
> (5) Indicate whether the dealer is surety bonded or is otherwise insured to protect the consumer against errors and omissions of the dealer and, if bonded or insured, provide proof thereof.
>
> (6) Indicate the last four digits of the dealer's resale certificate number from the State Board of Equalization.

> (7) Indicate whether the item was autographed in the presence of the dealer and specify the date and location of, and the name of a witness to, the autograph signing.
>
> (8) Indicate whether the item was obtained or purchased from a third party. If so, indicate the name and address of this third party.
>
> (9) Include an identifying serial number that corresponds to an identifying number printed on the collectible item, if any. The serial number shall also be printed on the sales receipt. If the sales receipt is printed electronically, the dealer may manually write the serial number on the receipt.

Cal. Civ. Code § 1739.7(b).

32. When an item was autographed in the presence of a dealer, the law requires dealers to disclose on the certificate of authenticity, among other things, the name of a third-party witness to the signing. Cal. Civ. Code § 1739.7(b)(7).

33. Similarly, when an autographed item is obtained from a third party, a dealer must disclose in the certificate of authenticity the third party's name and address. Cal. Civ. Code § 1739.7(b)(8). Dealers must maintain such personal information about their patrons for 7 years.

34. Dealers are compelled to retain a copy of each certificate of authenticity for at least seven years. Cal. Civ. Code § 1739.7(b).

35. Dealers are required to post signs about the autograph law at particular places within their places of business; include disclosures if they sell collectibles by mail-order or on-line; and bring examples of certificates of authenticities to trade shows. Cal. Civ. Code § 1739.7(d), (e), and (f).

36. Section 1739.7 subjects dealers to the risk of substantial penalties—even when no intentional or reckless wrongdoing exists. Consumers who suffer injury because a dealer either (a) failed to provide a certificate of authenticity or (b) provided a false certificate of authenticity, "shall be entitled" to recover, in addition to actual damages, a civil penalty in an amount equal to 10 times actual damages, plus court costs, reasonable attorney's fees, interest, and expert witness fees. *Id.* § 1739.7(g). Moreover, Section 1739.7 grants courts the discretion to award additional damages based on the "egregiousness of the dealer's conduct." *Id.*

///

///

**Plaintiffs are threatened by Section 1739.7**

37. Plaintiffs sell "collectibles" as defined in California Civil Code section 1739.7(a)(2). Every year, Book Passage sells tens of thousands of signed books for more than five dollars.

38. Book Passage and Mr. Petrocelli believe they are "dealers" as defined by Section 1739.7(a)(4)(A). They are principally engaged in the sale of signed books, and are widely recognized as having knowledge and skill peculiar to signed books. Accordingly, Plaintiffs are "dealers" engaged in the sale of "collectibles" under Section 1739.7(a)(4)(A).

39. Section 1739.7 requires Book Passage and Mr. Petrocelli to prepare, and for at least seven years retain a copy of, a certificate of authenticity for every autographed book that they sell or offer for sale in or from California for $5.00 or more.

## INJUNCTIVE RELIEF ALLEGATIONS

40. Plaintiffs incorporate and re-allege each and every allegation contained in the preceding paragraphs of this Complaint.

41. Defendant enforces the criminal penalties required by the challenged law. Section 1739.7 chills the First Amendment rights of booksellers like Plaintiffs. Section 1739.7 places significant compliance burdens on Plaintiffs' ability to sell autographed books and also threatens the imposition of actual damages, a civil penalty in an amount equal to 10 times actual damages, costs, reasonable attorney's fees, expert-witness fees—without any showing of intentionally wrongful conduct—as well as "additional damages" based on a court's determination of the "egregiousness of the dealer's conduct." Because of these burdens and potential penalties, Plaintiffs are now and will continue to be burdened in the exercise of their First Amendment rights. These burdens are arbitrary and irrational, as pawn brokers and online marketers are exempted from Section 1739.7.

42. If not enjoined by this Court, Defendant will continue to enforce Section 1739.7 in contravention of Plaintiffs' rights under the First and Fourteenth Amendments to Constitution of the United States.

43. Accordingly, permanent injunctive relief is appropriate.

///

**DECLARATORY RELIEF ALLEGATIONS**

44. Plaintiffs incorporate and re-allege each and every allegation contained in the preceding paragraphs of this Complaint.

45. An actual and substantial controversy exists between Plaintiffs and Defendant as to their respective legal rights and duties. Pursuant to 42 U.S.C. § 1983, Plaintiffs contend that Section 1739.7 on its face and as applied to Plaintiffs violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Defendant disputes that Section 1739.7 is unconstitutional.

46. There is a present justiciable controversy between the parties regarding the constitutionality and legality of Section 1739.7. Plaintiffs will be directly, adversely, and irreparably harmed by Defendant's actions enforcing and administering Section 1739.7, and Defendant's continuing administration, implementation, reliance, and enforcement of Section 1739.7 now and in the future. A judicial determination of rights and responsibilities arising from this actual controversy is necessary and appropriate at this time.

**CLAIMS FOR RELIEF**

**First Claim for Relief:**

**The Autograph Law unconstitutionally burdens protected speech in violation of the First Amendment**

47. Book Passage and Mr. Petrocelli incorporate and re-allege each and every allegation contained in the preceding paragraphs of this Complaint.

48. Book Passage and Mr. Petrocelli, through the sale of autographed books, hosting author-events, and managing the Signed First Editions Book Club, have engaged in and desire to continue engaging in constitutionally protected speech.

49. The challenged law infringes on the free-speech rights of Plaintiffs by imposing burdensome oversight and record-keeping tasks in connection with the sale of autographed books, and further, by subjecting Plaintiffs to punitive civil damages, even when no intentional or reckless conduct has taken place.

50. Section 1739.7 is a speaker-based burden on speech.

51. The challenged law is not narrowly tailored to a compelling state interest.

52. The law is more burdensome than necessary to protect the public from fraud. Plaintiffs do not profit from the sale of autographs, and the books Plaintiffs sell have little chance of containing fraudulent autographs.

53. In fact, the infringements are so burdensome that unless the challenged law is invalidated, Plaintiffs will discontinue both the author events, selling autographed books, and the Signed First Editions Club.

54. The state could adequately protect the public through less restrictive means.

55. By enforcing Section 1739.7, Defendant, acting under color of state law, unconstitutionally deprives Book Passage and Mr. Petrocelli of their constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

**Second Claim for Relief:**

**The Autograph Law is unconstitutionally overbroad**

**in violation of the First Amendment**

56. Plaintiffs incorporate and re-allege each and every allegation contained in the preceding paragraphs of this Complaint.

57. The First Amendment requires that the government regulate as little speech as necessary to further its goal. Where the government regulates too much speech, plaintiffs may challenge that regulation under the First Amendment overbreadth doctrine, even if their own speech can constitutionally be restricted. *Broadrick v. Oklahoma*, 413 U.S. 601, 614 (1973).

58. The autograph law will chill truthful, non-misleading speech that is protected by the First Amendment.

59. The autograph law will stifle the signing of autographs, which are themselves protected speech.

60. The autograph law will chill authors' ability to write inscriptions to their readers.

61. The autograph law will chill the First Amendment rights of Book Passage's customers by discouraging them from attending author events and obtaining autographed books.

///

62. The autograph law will chill Book Passage's customers' rights to purchase and sell books anonymously, and that will burden Plaintiffs' and others' ability to obtain signed books for resale.

63. Moreover, Section 1739.7 applies to *any* signatures on a "collectible." Therefore, a book originally given as a gift and signed by the gift-giver ("Love, Your Friend John") that is later re-sold, would also be subject to Section 1739.7—even though the author's signature does not appear in the book.

64. For these and other reasons, Section 1739.7 burdens a vast amount of constitutionally protected speech and is facially overbroad.

65. By enforcing Section 1739.7, Defendant, acting under color of state law, unconstitutionally deprives Book Passage, Mr. Petrocelli, and others of their freedoms of speech, which are protected by the First and Fourteenth Amendments to the United States Constitution.

**Third Claim for Relief:**

**The Autograph Law discriminates against Plaintiffs**

**in violation of the Equal Protection Clause**

66. Plaintiffs incorporate and re-allege each and every allegation contained in the preceding paragraphs of this Complaint.

67. Section 1739.7 exempts from its requirements certain pawn brokers and online marketers, and it thereby creates an irrational and arbitrary distinction among those who sell or offer to sell collectibles.

68. The Equal Protection Clause of the Fourteenth Amendment prohibits government from treating similarly situated persons differently unless the reasons for doing so are rationally related to a legitimate governmental interest.

69. Exempting pawn brokers and online marketers from the requirements of Section 1739.7 bears no rational relationship to any legitimate governmental interest.

70. Pawn brokers and online marketers are just as likely, if not more likely, to engage in sales of fraudulent autographs.

///

71. By enforcing the unequal definitions of "dealer" in Section 1739.7, Defendant, acting under of color of state law, irrationally and arbitrarily discriminates against Plaintiffs and in favor of special interests—pawn brokers and online marketers—in violation of Plaintiffs' right to equal protection of the laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Book Passage and William Petrocelli request the following relief:

1. Entry of a declaratory judgment that:

a. As-applied to Plaintiffs, California Civil Code § 1739.7 infringes the freedom of speech in violation of the First and Fourteenth Amendments to the United States Constitution;

b. On its face, California Civil Code § 1739.7 is overbroad in violation of the First and Fourteenth Amendments to the United States Constitution;

c. California Civil Code § 1739.7 deprives Plaintiffs of equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

2. Entry of a permanent injunction against Defendant, his agents, representatives, and employees, from enforcing California Civil Code § 1739.7, as well as any and all implementing administrative rules and regulations, and the policies and practices by which Defendant enforces these provisions;

3. An award of attorney's fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

///

///

///

///

///

///

///

4. Any award of further legal and equitable relief as this Court may deem just and proper.

DATED: May 11, 2017.

Respectfully submitted,

JOSHUA P. THOMPSON
ANASTASIA P. BODEN
Pacific Legal Foundation

By /s/ Anastasia P. Boden
ANASTASIA P. BODEN

Attorneys for Plaintiffs
Book Passage and William Petrocelli